**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**JUAN GABRIEL BARRIOS,**

     Petitioner,

v.                                  Civil Action No. **3:25cv660 (RCY)**

**ACTING WARDEN BIENEMY,**

     Respondent.

**MEMORANDUM OPINION**

Petitioner, a federal inmate proceeding *pro se*, filed a 28 U.S.C. § 2241 petition ("2241 Petition," ECF No. 5.)[1] challenging the Bureau of Prisons' ("BOP") failure to apply to his sentence earned time credits he has accrued under the First Step Act of 2018 ("FSA"). Respondent filed a Motion to Dismiss, ECF No. 8, asserting that Petitioner is not eligible to have his credits applied to his sentence due to his recidivism level and that this Court may not review the denial of Petitioner's request for an exemption, *see* Mem. Supp. Mot. Dismiss ("Mem. Supp."), ECF No. 9. Petitioner has filed a Response to the Motion to Dismiss, ECF No. 13, and Respondent has filed a Reply, ECF No. 14. For the reasons stated below, the Motion to Dismiss will be GRANTED, and Petitioner's § 2241 Petition will be DENIED.

**I.     STANDARD OF REVIEW**

The relevant statute provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). "[A] federal court may grant habeas relief 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system and corrects the spelling, punctuation, and capitalization in quotations from the record.

States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (second alteration in original).  After receiving a petition and the respondent's response, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.  A habeas petition brought under 28 U.S.C. § 2241 is subject to the Federal Rule of Civil Procedure 12 standards for dismissal.  *See, e.g.*, *Adepoju v. Scales*, 782 F. Supp. 3d 306, 312–13 (E.D. Va. 2025) (applying Rule 12(b)(1) and Rule 12(b)(6) standards to § 2241 petition); *Kabando v. Blinken*, No. 1:20-cv-1270 (RDA/JFA), 2021 WL 3929826, at *2 (E.D. Va. Sept. 2, 2021) (applying Rule 12(b)(6) standards to habeas petition).

 "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a [petition]; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a petitioner's well-pleaded allegations are taken as true, and the petition is viewed in the light most favorable to the petitioner.  *Mylan Lab'ys., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.  This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

 The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [respondent] fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Petitioners cannot satisfy this standard with petitions containing only "labels and conclusions" or

a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a petitioner must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the [petitioner] pleads factual content that allows the court to draw the reasonable inference that the [respondent] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). For a claim or petition to survive a 12(b)(6) challenge, therefore, the petitioner must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* petitions, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his petition. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.    BACKGROUND

### A.    Factual Background

Petitioner is currently incarcerated at the Federal Correctional Institution Medium in Petersburg, Virginia ("FCI Petersburg"). 2241 Pet. at 1. Consistent with a statutory architecture to be explained below, Petitioner—like the majority of federal inmates—has accrued time credits potentially usable to accelerate his transfer to prerelease custody or to an early term of supervised release. *See* 2241 Pet. Ex. C at 1, ECF No. 5-4 (accounting the time credits Petitioner had accrued at the time of filing). Throughout the term of his incarceration, he has participated in a variety of institutional programs and activities and has successfully lowered his assigned recidivism risk

3

level from high to medium.  2241 Pet. Mem. Supp. at 7, ECF No. 5-1; 2241 Pet. Ex. C at 1.  His

current estimated release date is September 27, 2027.  *See* Federal Bureau of Prisons, Find an

Inmate, https://www.bop.gov/inmateloc/ (search by Register Number 11452-059) (last visited

April 8, 2026).

In an effort to apply the time credits he has earned to his sentence, Petitioner submitted a

request to the warden of FCI Petersburg for an "exemption" to rules that otherwise prohibited him,

as a medium recidivism status inmate, from having them applied.  2241 Pet. Mem. Supp. at 1, ECF

No. 5-1; *see* 2241 Pet. Ex. A at 1, 3, 7, ECF No. 5-2.)  Observing that Petitioner had "committed

a 100 and 200 level prohibited act during [his] incarceration," Acting Warden J. Bienemy denied

that request on November 19, 2024.  2241 Pet. Ex. A at 7, ECF No. 5-2.

**B.      Procedural Background**

On August 11, 2025, Petitioner filed what he styled as a "Legal Memorandum"

"petition[ing] this Court for relief under 28 U.S.C. § 2241 to have his First Step Act – FSA – time

credits applied to his release according to statutory law."  ECF No. 1, at 1.  Because Petitioner had

not complied with Local Civil Rule 83.4, the Court directed Petitioner to submit his claims using

a "standardized form for filing a § 2241 petition."  Mem. Order 1, ECF No. 3.  Petitioner complied

with this directive on September 23, 2025, and filed the instant § 2241 Petition, raising four

grounds for relief—each a variation on the same theme:

> Claim One:    "Staff's failure to apply earned time credits to my pre-release custody."
> 2241 Pet. 6.

> Claim Two:    "Staff refusal of my F.S.A. earned time credits to be applied to my pre-
> release custody." *Id.* at 7.

> Claim Three: "Staff not applying my F.S.A. time credits to my pre-release custody based
> on the language of the F.S.A." *Id.*

Claim Four:    "Staff refusal to apply my earned time credits per the F.S.A." *Id.* at 8.[2]

Consistent with the language of his claims, as relief, Petitioner requests that his earned time credits be "applied to pre-release custody as Congress intended based on the actual language of the FSA and how it is applied to federal inmates." *Id.*

## C.    The Relevant Statutory Scheme

The FSA tasked the Attorney General of the United States with developing a "risk and needs assessment system" to achieve the following:

(1)  determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;

(2)  assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;

(3)  determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);

(4)  reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;

(5)  reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that—

   (A)  all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;

   (B)  to address [ ] the specific criminogenic needs of the prisoner; and

   (C)  all prisoners are able to successfully participate in such programs;

(6)  determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);

---

[2] The Court does not discern any meaningful differences between these claims and will thus consolidate them for purposes of analysis below.

5

**(7)** determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624; and

**(8)** determine the appropriate use of audio technology for program course materials with an understanding of dyslexia.

18 U.S.C. § 3632(a) (footnote omitted).

Consistent with the FSA's requirements, "the BOP designed its 'Prisoner Assessment Tool Targeting Estimated Risks and Needs' ("PATTERN") system, which ultimately places a prisoner in one of four recidivism risk categories: minimum, low, medium, or high." *Williams v. FCI Beckley Warden*, No. 5:25-00189, 2025 WL 4033845, at *3 (S.D. W. Va. Nov. 19, 2025), *R&R adopted*, 2026 WL 88542 (S.D. W. Va. Jan. 12, 2026). Inmates are reassessed and assigned a recidivism risk category at least once every 180 days during "program review[s]." 28 C.F.R. § 524.11; *see also Sharma v. Peters*, 756 F. Supp. 3d 1271, 1276 (M.D. Ala. 2024) ("An inmate's subsequent assessment intervals are 180 days, because BOP policy requires that an inmate's recidivism risk level be reassessed during regularly scheduled Program Reviews which occur at least once [every] 180 days." (citing 28 C.F.R. § 524.11(a)(1))); *Mohammed v. Stover*, No. 3:23-CV-757 (SVN), 2024 WL 1769307, at *5 (D. Conn. Apr. 23, 2024) ("An inmate's [recidivism] risks and [criminogenic] needs are typically reassessed during regularly scheduled reviews." (citing 28 C.F.R. § 524.11(a))); *Pierre v. Joseph*, No. 4:23-2535-JFA-TER, 2023 WL 5758662, at *2 n.2 (D.S.C. July 14, 2023) ("BOP program statement 5400.01 requires reassessment every 180 days."), *R&R adopted*, 2023 WL 5319778 (D.S.C. Aug. 18, 2023).

Irrespective of their particular recidivism level (with very few exceptions not relevant to this action), inmates may earn time credits to possibly be applied toward their transfer to prerelease custody or a term of early supervised release. 18 U.S.C. § 3632(d)(4)(A), (C). That an inmate is eligible to earn time credits, however, does not necessarily mean that he or she may *apply* those

6

time credits to his or her sentence. *See West v. Cutwright*, No. 1:24-CV-00380, 2025 WL 2639883, at *5 (S.D. W. Va. July 9, 2025) ("Although all eligible inmates may earn FSA time credit, only some inmates are eligible to apply those time credits." (quotation marks omitted) (citation omitted)), *R&R adopted*, 2025 WL 2641713 (S.D. W. Va. Sept. 12, 2025).  Rather, the relevant statute limits application of the time credits as follows:

(1) **Eligible prisoners**.—This subsection applies in the case of a prisoner (as such term is defined in section 3635) who—

(A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

(B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

(D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner--

(I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

(II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--

(aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(cc) the prisoner is unlikely to recidivate; or

7

> **(ii)** in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g)(1).  In short, then, to apply earned time credits toward transfer to prerelease custody, an inmate must (1) have been determined to be at minimum or low recidivism risk for his or her last two assessments, *see* 18 U.S.C. § 3624(g)(1)(D)(i)(I) ("Option One"), or (2) have had a petition granted by the warden of the prison, the warden having determined that the prisoner is not likely to recidivate, *see* 18 U.S.C. § 3624(g)(1)(D)(i)(II) ("Option Two").  As a matter of policy, the BOP has provided that, ordinarily, inmates who have "committed 100 OR 200 level prohibited acts during [their] term of incarceration" are "inappropriate for early transfer to prerelease custody" under Option Two.  *See* BOP Program Statement 5410.01, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)* at 15, available at https://www.bop.gov/policy/progstat/5410.01_cn.pdf (last accessed April 8, 2026).

### III.   ANALYSIS

Although Petitioner purports to assert four claims in the § 2241 Petition, as noted previously, the Court does not discern any meaningful difference between those claims.  In each, Petitioner contests the BOP's decision not to apply time credits he had earned to his sentence for transfer to prerelease custody.  As discussed above, Petitioner had two avenues for application of these time credits:  (1) having a low or minimum recidivism status for two assessment periods, or (2) the warden's discretionary decision to grant relief.  *See* 18 U.S.C. § 3624(g)(1)(D).  Petitioner believes he is entitled to relief under either or both of these options.  The Court addresses his arguments below and finds that he is not entitled to the relief he seeks.

**A.     Option One – Statutory Entitlement to Apply Time Credits**

Petitioner challenges the BOP's interpretation of the FSA as to Option One—the application of time credits by virtue of having a low or minimum recidivism status—arguing that, consistent with the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and other cases relating to statutory interpretation, he should be eligible to apply his time credits to his prerelease custody date despite his "medium" recidivism status. *See* 2241 Pet. Mem. Supp. at 6. Specifically, he focuses on 18 U.S.C. § 3624(g)(1)(B), *see id.* at 4–6, 8, which states that, to be eligible for application of time credits, a prisoner must have "shown through the periodic risk reassessments a demonstrated recidivism risk reduction *or* has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment," 18 U.S.C. § 3624(g)(1)(B) (emphasis added)). The statute's use of the "disjunctive" word "or," Petitioner asserts, supports his position. 2241 Pet. Mem. Supp. at 4–6.

But for *Loper Bright* to apply and this theory to carry any weight, Petitioner would need to be challenging an agency's interpretation of an ambiguous statute.[3] Despite Petitioner's apparent belief to the contrary and the statute's use of "disjunctive" language, the FSA is not ambiguous. Indeed, Petitioner apparently ignores § 3624(g)(1)(D), the subsection of the statute that specifically addresses application of credits with respect to a transfer to prerelease custody, the precise form of relief he seeks through the § 2241 Petition. This provision "unambiguously mandates that only inmates with low and minimum recidivism scores are eligible to have earned time credits under the FSA applied toward pre-release custody or supervised release." *Purdy v.*

---

[3] In *Loper Bright*, the Supreme Court overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which required courts to defer to agencies' reasonable interpretations of ambiguous statutes. 603 U.S. at 412–13; *see Chevron*, 467 U.S. at 844. Under *Loper Bright*, courts may not defer to an agency's interpretation of the law simply because a statute is ambiguous but rather "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. at 412.

*Carter*, No. BAH-24-582, 2024 WL 4651275, at *5 (D. Md. Nov. 1, 2024) (citing 18 U.S.C. § 3624(g)(1)(B), (D)(i)(I), and (D)(ii)).  Courts across the nation are in agreement with this proposition and have rejected arguments that the FSA is ambiguous such that *Loper Bright* is applicable.  *See Williams*, 2025 WL 4033845, at *5 (collecting cases and finding *Loper Bright* inapplicable because "Section 3624(g)(1) explicitly prohibits the BOP from applying FSA credit unless an inmate has a minimum or low-risk recidivism scores (PATTERN score)").

The Court agrees with the overwhelming weight of authority addressing this issue.  Put simply, *Loper Bright* is not applicable and Petitioner was and is not entitled to apply his time credits for a transfer to prerelease custody pursuant to Option One.  Accordingly, the portions of Claims One through Four addressing Option One will be DISMISSED.

**B.      Option Two – Discretionary Approval of Time Credit Application**

Because Petitioner was not eligible for application of his time credits by way of Option One, his only other avenue for relief comes from Option Two, the warden's power to discretionarily permit the application of earned time credits.  *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II); *Welch v. Heckard*, No. 5:23-cv-00347, 2023 WL 6885005, at *4 (S.D. W. Va. Sept. 19, 2023) ("If a prisoner does not have a minimum or low recidivism risk level, he must petition the Warden for individual approval of the application of his earned time credits." (footnote and citation omitted)), *R&R adopted*, 2023 WL 6882684 (S.D. W. Va. Oct. 18, 2023).

Petitioner applied for and was denied this form of relief by Acting Warden J. Bienemy, who cited Petitioner's past disciplinary offenses as the reason for his denial.  *See* 2241 Pet. Ex. A at 1, 3, 7, ECF No. 5-2.  Petitioner asserts that Warden Bienemy should not have denied his exemption request "because the warden's discretionary application is made up of several different requirements not mentioned, versed or stated in the First Step Act."  Resp. Opp'n Mot. Dismiss 7,

10

ECF No. 13. But the warden's discretionary decision is not reviewable by this Court. *See Brown v. Holzapfel*, No. 5:24-cv-00062, 2024 WL 3264795, at *3 (S.D. W. Va. June 6, 2024) (collecting cases and finding warden's decision to deny application of time credits under 18 U.S.C. § 3624(g)(1)(D)(i)(II) to be unreviewable), *R&R adopted,* 2024 WL 3258279 (S.D. W. Va. July 1, 2024), *overruling objections*, 2025 WL 19064 (S.D. W. Va. Jan. 2, 2025). Because the Court is unable to review or consider the warden's decision, the portions of Claims One through Four that address Option Two will also be DISMISSED.

## IV.    CONCLUSION

"[The] labyrinthine interaction between eligibility to earn and receive credits and eligibility to apply those same credits is no doubt frustrating to prisoners trying to navigate the system." *Nevel v. Brown*, No. 5:23-CV-285, 2023 WL 8505881, at *6 (N.D. W. Va. Oct. 27, 2023), *R&R adopted*, 2023 WL 7490046 (N.D. W. Va. Nov. 13, 2023). Even so, it is clear that Petitioner is not entitled to relief. Accordingly, Respondent's Motion to Dismiss (ECF No. 8) will be GRANTED, Petitioner's § 2241 Petition (ECF No. 5) will be DENIED, and the action will be DISMISSED.

An appropriate Order shall accompany this Memorandum Opinion.

_____ /s/ *RCY*
Roderick C. Young
United States District Judge

Date:  April 22, 2026
Richmond, Virginia